UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Cause No. 1:13-cr-98-WTL-DML |
| DENNIS NEIL VANHOUTEN, | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTIONS**

This cause is before the Court on Defendant Dennis Neil Vanhouten's motion to dismiss (dkt. no. 50) and motion to suppress (dkt. no. 48). The Government has responded to both motions (dkt. nos. 54 and 55). The Court, being duly advised, **DENIES** VanHouten's motion to dismiss. The Court **TAKES UNDER ADVISEMENT** VanHouten's motion to suppress until a factual finding can be made at trial.

**I. BACKGROUND**

A brief background of the facts relevant to these motions follows.

On April 16, 2013, VanHouten was traveling westbound on I-70 through Hendricks County, Indiana. Brownsburg Police Officer John Maples observed his vehicle traveling without a license plate and conducted a traffic stop. As Officer Maples approached VanHouten's vehicle, he observed a paper tag that was improperly displayed behind the window tint of the rear hatch window. Officer Maples then greeted VanHouten, informing him of why he was stopped. VanHouten gave Officer Maples his information, and he was released with a verbal warning.

Officer Maples then returned to his squad car and ran VanHouten's information. A violent sex offender arrest warrant hit. Officer Maples then initiated a second traffic stop in

1

Putnam County, Indiana where VanHouten was arrested.  Upon searching VanHouten's vehicle, officers found a Norinco model SKS rifle and a locked container that later reveled 1,840 rounds of ammunition for the SKS rifle.  VanHouten was then charged by way of an indictment as a convicted felon in possession of an assault rifle and ammunition, all in violation of 18 U.S.C. § 922(g).

## II.     DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 12(b), VanHouten filed a motion to dismiss the indictment and a motion to suppress evidence.  Each will be addressed, in turn, below.

### A.  Motion to Dismiss

VanHouten raises four issues in his motion to dismiss; however, two overlap with his motion to suppress.  Accordingly, the Court will address those arguments unique to the motion to dismiss first.

First, VanHouten argues that the he was not given notice of the grand jury proceeding and was therefore unable to raise any challenges to the proceeding and grand juror members, in violation of the Fifth Amendment.  However, as the Government notes, VanHouten had no right to be present at the grand jury proceeding:

> It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge.  That has always been so; and to make the assessment *it has always been thought sufficient to hear only the prosecutor's side*. . . . According to the description of an early American court, three years before the Fifth Amendment was ratified, it is the grand jury's function not "to enquire . . . upon what foundation [the charge may be] denied," or otherwise to try the suspect's defenses, but only to examine "upon what foundation [the charge] is made" by the prosecutor.  As a consequence, *neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented.*

2

*United States v. Williams*, 504 U.S. 36, 51-52 (1992) (internal citations omitted) (emphasis added). Accordingly, VanHouten's claim that the grand jury proceeding—and resulting indictment—is violative of his Fifth Amendment right, fails.

VanHouten's next argument is that the indictment is defective because it fails to include the serial number of the firearm. The Court does not agree. Federal Rule of Criminal Procedure 7(c)(1) provides the following: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." The Seventh Circuit has noted that an indictment is constitutionally adequate and complies with Rule 7(c)(1) if: 1) it states the elements of the offense charged; 2) it fairly informs the defendant of the nature of the charge so that he may prepare a defense; and 3) it enables the defendant to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997).

The indictment in Vanhouten's case states that on or about April 16, 2013, Vanhouten "having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year . . . did knowingly possess in and affecting commerce any firearm, to wit: Norinco model SKS 7.62 X 39 assault rifle." *See* dkt. no. 11. Count One of the indictment adequately recites all of the elements of a § 922(g)(1) violation. *See United States v. Ortiz,* 474 F.3d 976, 982 (7th Cir. 2007) ("There are three elements to a § 922(g)(1) violation: the prior felony, the possession of the gun and the gun's travel in interstate commerce (that is, across state lines) prior to the defendant's possession of it."). VanHouten provides no support for his argument that the serial number of the firearm is an essential element of the crime charged such that it must be included in the indictment. *See United States v. Skelley*, 501 F.2d 447, 452 (7th Cir. 1974) (noting that in

a counterfeit case, "there was no necessity to set forth the fictitious serial numbers in the indictment, and that the indictment would have been legally sufficient without this descriptive surplusage."); *see also United States v. Franklin*, 547 F.3d 726, 730-31 (7th Cir. 2008) ("[T]his circuit does not require that a particular word or phrase always be used when charging an offense in an indictment[.]"). VanHouten was fairly informed of the charges against him to prepare his defense, and can never again be charged with possession of this firearm on this specific date. The indictment is not defective and his motion to dismiss on this ground is denied.

### B. Motion to Suppress

VanHouten's motion to suppress rests on two main arguments:[1] 1) the initial traffic stop and continued detention of him was violative of his Fourth Amendment rights; and 2) any statements made by him must be suppressed because they were obtained in violation of his Fifth and Sixth Amendment rights.

With regard to the traffic stop, VanHouten challenges both the initial stop and his continued detention. Thus, the Court needs to address two issues: First, did Officer Maples have reasonable suspicion to stop VanHouten's vehicle; and second, did Officer Maples continue to have justification for the brief detention once he saw the paper tag?

VanHouten was stopped pursuant to Indiana Code section 9-18-2-26 which provides that "[l]icense plates, including temporary license plates shall be displayed . . . upon the rear of the vehicle . . . securely fastened, in a horizontal position . . . in a place and position that are clearly visible . . ." Interim license plates are also allowed to be displayed "in a location on the left side of a window facing the rear of the motor vehicle that is clearly visible and unobstructed." Ind. Code § 9-32-6-11. Officer Maples initiated the traffic stop because he did not observe a license

---

[1] As noted above, these arguments were also raised in VanHouten's motion to dismiss. To prevent duplicative analyses, the Court will only address them once.

plate on VanHouten's vehicle at all—this was proper, as driving without a license plate is illegal. Accordingly, the Court finds no issue with the initial traffic stop of VanHouten's vehicle. *See Speer v. State*, 995 N.E.2d 1, 5-6 (Ind. Ct. App. 2013) (noting that an officer had reasonable suspicion under the Fourth Amendment to conduct a traffic stop pursuant to Indiana Code section 9-18-2-36 because the defendant's license plate was partially obstructed).

Turning to the second question, once VanHouten was stopped, Officer Maples observed a paper tag. VanHouten thus argues that once he saw the tag, Officer Maples had no justifiable reason to continue his detention. In support, he relies on *Meredith v. State*, 886 N.E.2d 79 (Ind. Ct. App. 2008). The Court notes that this decision has been vacated by the Indiana Supreme Court in *Meredith v. State*, 906 N.E.2d 867 (Ind. 2008). Nevertheless, VanHouten ignores one key fact in his case—his temporary tag was *improperly* displayed. Because VanHouten's temporary license plate was improperly displayed, Officer Maples was justified in continuing his detention, asking for his information, and issuing a verbal warning. *See United States v. Tipton*, 3 F.3d 1119, 1123 (7th Cir. 1993) ("Nor were the officers obliged to abort the stop even if they had noticed the improperly affixed sticker prior to questioning. A driver with a temporary sticker is obliged to display the sticker prominently at all times, and in this case the sticker was not readily visible."); *see also United States v. Dumas*, 94 F.3d 286, 290 (7th Cir. 1996) ("[T]he fact that the tag affixed behind the tinted glass was 'illegible' and could not be 'readily and distinctly seen and read' constituted a violation" that allowed the officer to continue his investigation.). VanHouten's brief detention and resulting verbal warning was justified due to the improper

display of his temporary license plate.[2] Accordingly, the Court will not suppress any evidence on these grounds.

VanHouten's second argument is that the statements he made to the officers must be suppressed because: 1) he never signed the *Miranda* waiver form; and 2) he requested an attorney be present prior to any questioning.

After he was arrested, VanHouten was brought to a squad car for an interview with police. He informed officers of his date of birth, that he had a GED, that he was previously a helicopter mechanic in the military, and that he was living with his parents in New York.[3] Special Agent Eric Jensen then took out a *Miranda* waiver form to which VanHouten said, "If you read that to me, I'm done talking to you." The form was then read to VanHouten. Agent Jensen asked VanHouten if he understood his rights, to which he nodded his head up and down; he did not sign the form because he was in handcuffs. Despite what he said, VanHouten continued to talk to the officers. He told officers he was moving to Arizona to live with a guy named Cody, that he had never been arrested, and that his DNA would be found on the firearm. He then said, "Now I am done talking to you."

---

[2] The Government notes that even if Officer Maples had no basis to continue the detention of VanHouten, the fact that an outstanding arrest warrant from New York was issued renders this argument moot. The Court agrees. *See Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011) ("[A] person named in a valid warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended unless some other right of his is infringed[.]"; *see also Banks v. Fuentes*, 545 F. App'x 518, 521 (7th Cir. 2013) ("Like a warrant, the investigative alert authorized Banks's arrest because other officers already had made a determination of probable cause. Thus, there was no infringement of Banks's rights when the officers stopped him and took him into custody, even if they were mistaken in believing that his vehicle had crossed the center line.") (internal citations omitted).

[3] These "routine booking questions" need not be suppressed because they were elicited pre-*Miranda*. *See United States v. Knope*, 655 F.3d 647, 652 (7th Cir. 2011) ("[R]outine booking questions asked before *Miranda* warnings are given are not usually grounds for suppression of a defendant's statements revealing his identity and residence.") (internal quotation marks omitted).

VanHouten disagrees with the above facts in one key regard. He alleges that he stated, "If you have to read that [the waiver form] to me, I'm going to have to have an attorney present."[4] As the Government notes, this is different from what the officers reported, which was "If you read that to me, I'm done talking to you." *See* dkt. no. 1 at 7, ¶ 12. The difference is whether VanHouten was trying to invoke his right to counsel or his right to remain silent.

It is well-established that "the police must stop questioning if an accused asserts his *Miranda* right to counsel[.]" *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005). However, an invocation of the right to counsel must be unambiguous. *See United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005) ("[T]he accused must make a clear and unambiguous assertion of his right to counsel to stop questioning[.]"). The Court believes that if VanHouten said, "If you have to read that to me, I'm going to have to have an attorney present," this may indeed warrant suppression of the above statements.[5]

If, on the other hand, VanHouten said, "If you read that to me, I'm done talking to you," this indicates he was attempting to invoke his right to remain silent. The Government argues that after he said this, however, he continued to talk with the police until he *actually* invoked his right to remain silent by saying, "Now I am done talking to you." In other words, even if VanHouten did invoke his right to remain silent, he "subsequently voluntarily waive[d] that right." *United States v. Madison*, 689 F.2d 1300, 1307 (7th Cir. 1982); *see also Miranda v. Arizona*, 384 U.S. 436, 460 (1966) ("That privilege against self-incrimination guarantees a person under custodial

---

[4] VanHouten cites "Excerpts from Criminal Complaint Case Number: 1:13-mj-0379" in support of the fact that he made this statement. This is the magistrate case that was merged with the current criminal case. Nevertheless, the complaint found under the magistrate case is the same as that in the current criminal case and does not reflect that VanHouten said "I'm going to have to have an attorney present."

[5] The Court notes that *suppression* of the statements made would be the correct remedy if VanHouten unambiguously asserted his right to counsel, not dismissal of the indictment.

interrogation the right to remain silent unless he chooses to speak in the unfettered exercise of his own will.") (internal quotation marks omitted). That VanHouten did not sign the written waiver form is not dispositive of the issue nor would it render his later oral waiver involuntary. *See United States v. Murdock*, 491 F.3d 694, 700 (7th Cir. 2007) ("Finally, the officers' failure to obtain a written waiver from Murdock does not render his oral waiver or subsequent confession involuntary.").

Accordingly, the Court will have to make a factual finding at trial as to what VanHouten actually said in order to further analyze whether the statements should be suppressed.[6] It thus takes this part of VanHouten's motion to suppress under advisement at this time.

### III. CONCLUSION

VanHouten's motion to dismiss (dkt. no. 50) is **DENIED**; his motion to suppress (dkt. no. 48) is **TAKEN UNDER ADVISEMENT** until a factual finding can be made at trial as to whether VanHouten attempted to invoke his right to remain silent or his right to counsel.

SO ORDERED: 04/04/2014

**Copy by U.S. mail to:**

**DENNIS NEIL VANHOUTEN
Jail ID T00704575
Cell Block 4R
MARION COUNTY JAIL
Inmate Mail/Parcels
40 South Alabama Street
Indianapolis, IN 46204**

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

[6] The Government requests that if the statements are suppressed, it be allowed to use them for cross-examination purposes if VanHouten chooses to testify. The Court will take this request under advisement pending further resolution of the suppression issue.